## **AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT**

I, Kyle Zgraggen, having been duly sworn, do hereby depose and state as follows:

### **INTRODUCTION**

1.     I am a Special Agent with the United States Social Security Administration, Office of the Inspector General, Office of Investigations ("SSA/OIG/OI"), and have been so employed since May 2010.  I am currently assigned to the Boston, Massachusetts Field Office.  My duties include conducting investigations regarding all crimes against the Social Security Administration ("SSA") and its benefit programs.  I have conducted over one hundred investigations involving identity theft and benefit fraud and I am familiar in the ways that identity theft and benefit fraud schemes are facilitated.  I am a graduate of the Criminal Investigator Training Program and the Inspector General Investigator Training Program taught at the Federal Law Enforcement Training Center in Glynco, Georgia. I have a bachelor's degree in Communication from the University of Maryland, College Park.

2.     I am aware, based on my training and experience, that 18 U.S.C. § 1343 makes it a criminal offense to knowingly, willingly, and with intent to defraud, participate in a scheme

1

or artifice to defraud using false or fraudulent pretenses, in furtherance of which scheme interstate wires are used.

3.      The information set forth in this affidavit is based on my personal knowledge, information provided to me by other law enforcement agencies, my review of materials obtained from businesses and public records, review of information provided to me by SSA employees, and my review of relevant SSA records and documents.  This affidavit is not intended to set forth all of the information that I have learned during this investigation, but only facts I believe are sufficient to establish probable cause in support of the issuance of a criminal complaint and an arrest warrant, charging Jasper DENETCLAW (hereinafter "DENETCLAW") with violating 18 U.S.C. § 1343 - Wire Fraud.

### BACKGROUND: SOCIAL SECURITY RETIREMENT BENEFITS

4.      The Social Security Administration is an agency of the United States government that administers, among other things, a retirement benefits program.  Essentially, a person who has earned income from work throughout his or her lifetime may be eligible to receive a monthly payment from Social Security when he or she retires.

5.      A person may retire as early as age 62 and receive a reduced monthly benefit.  To receive a full monthly benefit, a person must apply for retirement benefits only after attaining

2

full retirement age.  For those born from 1943 to 1954, full
retirement age is 66 years.

6.     If a person has attained full retirement age, he or
she may claim up to six months of retroactive benefits when
applying for Social Security retirement benefits.  In other
words, if a person stops working on a certain date and then
waits six months to apply for retirement benefits, the person
could receive a lump-sum payment from Social Security for that
six month interim.  The person would then continue to receive a
monthly payment thereafter.

7.     Applications for Social Security retirement benefits
may be submitted online using the Social Security
Administration's website, and applications may instruct Social
Security to pay the retirement benefits via direct deposit.

### THE SCHEME TO DEFRAUD

8.     To date, the investigation of this scheme has focused
on ten fraudulent online applications for Social Security
retirement benefits ("the fraudulent online applications") filed
by an unknown person or persons in 2014.  The fraudulent online
applications were filed using the identities of real people,
each employed in a profession and of full retirement age at the
time of the filing such that the filings resulted in payments of
substantial benefits.  Nine of the victims have confirmed that

3

they did not, in fact, apply for Social Security retirement benefits.   Law enforcement agents have not yet successfully contacted the tenth victim.

9.     I have reviewed the fraudulent online applications and note that they have a number of things in common:   each falsely claim that the purported applicant had stopped working exactly six months earlier, thus claiming the maximum allowable retroactive benefits; each state that the purported applicant wished to waive Medicare Part B coverage, thus typically resulting in a larger lump-sum payment; and each directed the Social Security Administration to deposit the benefits directly into a bank account controlled by DENETCLAW rather than to any of the purported applicants.   Many contained fake or invalid addresses and used the same or similar email addresses, and many of the phone numbers provided were the same or similar.   Based upon my review of records, I know that many of the telephone numbers used on the subject applications are indicative of Voice Over Internet Protocol ("VOIP") internet phone systems, which were being accessed from Nigeria.

10.     The Social Security Administration processed the fraudulent online applications.   By way of example, on the night of May 6, 2014, the claim filed under the identity of John Doe #2 was routed to Social Security's Workload Support Unit (WSU)

4

in the O'Neill Federal Building in Boston, Massachusetts. The next day, May 7, 2014, at 8:22am, an email transmission between two WSU claims representatives directed that the claim submitted in the name of John Doe #2 be processed. On May 12, 2014, the application was reviewed by a claims representative and was processed for payment. All Social Security Administration Outlook emails are routed through a server located near Social Security headquarters in Maryland and therefore all emails, even if sent between two employees physically located in Boston, Massachusetts, are routed to Maryland and cross state lines.

### DENETCLAW'S PARTICIPATION IN THE SCHEME

11.    I have also reviewed bank records that show that beginning in or about April 2014, DENETCLAW, a resident of New Mexico, received Social Security payments generated by the fraudulent online applications into three bank accounts that he controlled:  First American Credit Union checking account number X3382 ("FACU #3382"); Bank of America checking account number x2574 ("BOA #2574"); and Bank of America savings account number x9490 ("BOA #9490").

12.    During the relevant months, the only significant new deposits into these three accounts were the direct deposits of fraudulently obtained Social Security funds.  The initial lump-sum retirement benefit payments were directly deposited into

5

DENETCLAW's accounts on or about the listed dates as follows:

| Purported Applicant | Amount | Date | Account |
|---|---|---|---|
| John Doe #1 | $18,010 | 5/7/14 | BOA #2574 |
| John Doe #2 | $17,603 | 5/14/14 | BOA #2574 |
| John Doe #3 | $17,042 | 5/16/14 | BOA #9490 |
| John Doe #4 | $16,418 | 6/2/14 | FACU #3382 |
| John Doe #5 | $21,954.90 | 6/11/14 | FACU #3382 |
| John Doe #6 | $20,834 | 6/12/14 | FACU #3382 |
| John Doe #7 | $18,990 | 6/25/14 | FACU #3382 |
| John Doe #8 | $18,599.40 | 7/9/14 | FACU #3382 |
| John Doe #9 | $18,612 | 7/10/14 | FACU #3382 |
| John Doe #10 | $17,688 | 7/22/14 | FACU #3382 |

13.    Typically, shortly after the fraudulently obtained Social Security funds were deposited, DENETCLAW withdrew the money and wired sums to Nigeria. From May 7, 2014 through July 18, 2014, DENETCLAW sent 70 wire transfers through Moneygram and Western Union totaling approximately $67,561 to recipients in Nigeria. He also wired money to other domestic bank accounts, and spent approximately $6,400 on personal expenses, including retail and restaurant purchases, using his debit card.

14.    On August 25, 2014, law enforcement agents interviewed DENETCLAW at his home in New Mexico. According to DENETCLAW, in

6

early 2014 he met a woman on Facebook who asked if he wanted to earn some money. When DENETCLAW responded positively, the woman put him in touch with "Simon" who, according to DENETCLAW, is located in Nigeria. Following instructions from "Simon," DENETCLAW opened an account at Bank of America and provided the account information to "Simon." DENETCLAW also gave "Simon" the account information for his personal account at First American Credit Union. DENETCLAW then withdrew or wired money that had been deposited into the account according to instructions that he received from "Simon." DENETCLAW stated that in the beginning, he thought it was a regular business but admitted that, after he checked the accounts and realized that the money was coming from the Social Security Administration, he knew it was wrong.

## CONCLUSION

15. Based on the foregoing, I believe probable cause exists that JASPER DENETCLAW knowingly, willingly, and with intent to defraud, participated in a scheme or artifice to defraud using false or fraudulent pretenses, in furtherance of which scheme interstate wires were used, in violation of 18 U.S.C. § 1343. Specifically, on May 7, 2014, at 8:22am, an email transmission between two WSU claims representatives directed that the claim submitted in the name of John Doe #2 be

7

processed.

Kyle Zgraggen
Special Agent
U.S. Social Security Administration
Office of the Inspector General
Office of Investigations

Date: January 29, 2015

Subscribed and sworn to before me this 29th day of January 2015.

MARIANNE B. BOWLER
U.S. MAGISTRATE JUDGE